# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

HOWARD M. CLARK, JR.,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:12-cv-2550-MCE-CMK

FINDINGS AND RECOMMENDATION

Plaintiff, who is proceeding without counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 21) and defendant's cross-motion for summary judgment (Doc. 22).

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 8, 2009, alleging an onset of disability on March 14, 2009, due to disabilities including HIV infection, asthma, depression, hypertension, and stress. (Certified administrative record ("CAR") 32-35, 130-31, 137-40, 161-65). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on April 13, 2011, before Administrative Law Judge

("ALJ") Allan K. Goldhammer. In a May 6, 2011, decision, the ALJ concluded that plaintiff is not disabled[1] based on the following findings:

> 1. The Claimant filed applications for a period of disability and disability insurance benefits for supplemental security income on June 8, 2009.
>
> 2. The Claimant meets the insured status requirements of the Social Security Act through the date of this decision (Exhibit 3D).
>
> 3. The evidence does not show that the Claimant has engaged in substantial gainful activity since March 14, 2009, the alleged onset date (Exhibit 3D) (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 4. The Claimant has the following severe impairments: asthma; depression; and, obesity (Exhibit 7F, p. 14-15)(20 CFR 404.1520(c) and 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

| | | |
|---|---|---|
| | 5. | The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| | 6. | After careful consideration of the entire record, I find that the Claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with no exposure to concentrated atmospheric irritants such as dusts, fumes, gases, etc., and no work with the public. |
| | 7. | The Claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| | 8. | The Claimant was born on August 3, 1982 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| | 9. | The Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| | 10. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| | 11. | Considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| | 12. | The Claimant has not been under a disability, as defined in the Social Security Act, from March 14, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

After the Appeals Council declined review on August 9, 2012, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically and/or mentally disabled. (20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).)  If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. (20 C.F.R. §§ 404.1520(a) and 416.920(a).)  The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

/ / /

/ / /

3.   If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[2] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[3]

4.   If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[4] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5.   If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[5] if the claimant can, the claimant is not disabled and the analysis ends.

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. (42 U.S.C. § 1382c(a)(3)(A).) A claimant must show that he or she has a physical or mental impairment of such severity that he or she is unable to do his or her previous work and cannot, considering his or her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. (Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).)

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. (Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).) The claimant

---

[2] See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[3] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. (See Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990) (citing Williams v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); Key v. Heckler, 754 F.2d 1545, 1548 (9th Cir. 1985).)

[4] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. (Villa v. Heckler, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).)

[5] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. (20 C.F.R. §§ 404.1520(f) and 416.920(f).)

1  establishes a prima facie case of disability by showing that a physical or mental impairment
2  prevents him from engaging in his previous occupation (steps 1 through 4 noted above).  (Gallant
3  v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).)
4  However, once the claimant establishes a prima facie case of disability, the burden of going
5  forward with the evidence shifts to the Commissioner.  (Burkhart v. Bowen, 856 F.2d 1335, 1340
6  (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986);  see Hammock v.
7  Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).)  The Commissioner has the burden to
8  establish the existence of alternative jobs available to the claimant, given his or her age,
9  education, and medical-vocational background (step 5 noted above). In an appropriate case, the
10 Secretary may meet this burden through application of the medical-vocational guidelines set forth
11 in the regulations.[6]  (See 20 C.F.R. Pt. 404, Subpt. P, App. 2; Heckler v. Campbell, 461 U.S. 458
12 (1983); Olde v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).)  If the guidelines do not accurately
13 describe a claimant's limitations, the Commissioner may not rely on them alone to show
14 availability of jobs for the claimant.  (See Desrosiers v. Secretary, 846 F.2d 573, 577 (9th Cir.
15 1988).)[7]

        In his motion for summary judgment, the only claim plaintiff appears to argue is
that the ALJ erred his evaluation of the medical opinions, specifically his rejection of plaintiff's
treating physician's opinion. This argument appears to be limited to plaintiff's mental health, as

---

[6] For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

[7] However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of guidelines.  Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Commissioner will be required to obtain expert vocational testimony regarding the availability of other work.  (See, e.g., Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).)  Pain has been recognized as a non-exertional limitation which can significantly limit ability to perform basic work skills.  (See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).)

the medical opinion he cites is Dr. Higgins, who opined plaintiff was significantly limited based on his depression.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining

professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to the medical opinions relevant to plaintiff's mental health, the ALJ stated:

> A consultative examiner Dr. Charles Debattista provided a psychiatric evaluation in August 2009. The Claimant complained of stress and emotional instability and reported symptoms of depressed mood, anxiety, anhedonia, fatigue, decreased appetite, insomnia, feelings of guilt, and problems with concentration and memory. On mental status exam, Dr. Debattista found depressed and anxious mood and somewhat constricted affect, but findings were otherwise unremarkable. He diagnosed major depressive disorder mild versus adjustment disorder with mixed emotional features and assigned a Global Assessment of Functioning (GAF) score of 59. He opined that the Claimant was able to understand, remember, and carry out simple one or two-step job instructions and able to perform detailed and complex instructions. He stated that the Claimant was mildly impaired in his ability to: relate and interact with coworkers and the public; maintain concentration, persistence, and pace; associate with day-to-day work activity, including attendance and safety; accept instructions from supervisors; maintain regular attendance in the work place and perform work activities on a consistent basis; and, perform work activities without special or additional supervision (Exhibit 3F). A GAF of 59 is at the highest level of moderate impairment for social, occupational or school functioning (DSMIV).
>
> . . .
>
> Regarding the Claimant's mental impairment, I give significant weight to Dr. Debattista and the State agency mental consultants as their conclusions are consistent with the limited findings and treatment.
>
> I accord minimal weight to Dr. Higgins' April 2011 evaluation. He found extensive marked limitations. Dr. Higgins, who prescribes marijuana for the Claimant, wrote that the Claimant has depression coupled with paranoia and a panic disorder and is totally disabled. Dr. Higgins found a marked impairment even of the ability to ask simple questions or request assistance, accept instructions and respond appropriately to supervisors, and to get along with coworkers. He provided no factual or clinical data in support of these conclusions and a record from Tri-City Health Center indicates that the Claimant has a decent support system of friends and family members (Exhibit 7F, August 28, 2009 note). Dr.

> Higgins also wrote that the Claimant has AIDS whereas there is no evidence the Claimant has an active case of AIDS.  Indeed, the Tri-City records reflect that the Claimant does not require medication and has an acceptable CD4 count.  There is no continuing evidence that the Claimant has any opportunistic infections that might be associated with AIDS although he is HIV positive (Exhibits 7F, 11F, and 12F).
>
> I do not have any reason to believe Dr. Higgins' evaluation, which seems so far-fetched as to be incredible, although I do believe the Claimant is depressed as indicated by Dr. Debattista.  Consistent with his findings, the Claimant maintained good eye contact at the hearing and was pleasant, cooperative, and appropriate.  Depression is very common and many people work with it.  He is on Paxil currently and also takes a medication for sleeping (Ambien) and testified that he sleeps well on the medication.  As discussed above he does have activities and is involved with family and with school and did well last semester.  Overall, I believe it would be best for the Claimant not to work with people currently even though Dr. Debattista did not limit him from working with the public.  However, based on Dr. Debattista's evaluation and the other evidence of record, I see no reason to limit the Claimant from simple basic work tasks or to believe that his concentration, persistence, and pace would be so impaired he could not perform simple basic work tasks.

(CAR 44-45).

Here, there are two contradicting medical opinions, based upon independent clinical findings.  The examining physician, Dr. Debattista found plaintiff had minimal limitations; Dr. Higgins, presumably a treating physician, found plaintiff severely limited.  The ALJ then had to evaluate these conflicting opinions, and resolve that conflict.  The ALJ did just than, setting forth several reasons why Dr. Debattista opinion was accepted, and why Dr. Higgins' opinion was rejected.  The ALJ went beyond simply resolving the conflict between the two opinions.  He provided specific and legitimate, even clear and convincing, reasons why Dr. Higgins' opinion was rejected.  In addition to the opinion being conclusory and unsupported, the ALJ found Dr. Higgins' opinion conflicted with plaintiff's treatment records.  As set forth above, these are all proper reasons supporting the ALJ's determination, which are supported by the record.  There are limited treatment records, and plaintiff indicated to the examining psychiatrist that had not seen a mental health professional.  The ALJ's determinaiton regarding the weight of

9

the medical opinions is supported by the record, proper reasons, and the undersigned finds no error.

### IV.  CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, the undersigned recommends that:

    1.    Plaintiff's motion for summary judgment (Doc. 21) be denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 22) be granted; and

    3.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 22, 2014

*[signature: Craig M. Kellison]*

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE